UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES SMITH, | ) |
| Plaintiff, | ) |
| | ) 15 C 2330 |
| v. | ) |
| Paul Anderson, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on Defendant Paul Anderson's ("Anderson") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") against Plaintiff Charles Smith ("Smith"). Jurisdiction is predicated on 28 U.S.C. §§ 1343 and 1367. For the following reasons, the motion for summary judgment is granted.

## BACKGROUND

The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1 ("Local Rule 56.1"). The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record. The parties do not dispute the facts below unless otherwise noted.

Smith is a former inmate of the Illinois Department of Corrections ("IDOC"). Dkt. 42, ¶ 1. He was "convicted of two felonies: (1) Criminal Sexual Assault in 2001 for which he was sentenced to eight years of imprisonment and three years of Mandatory Supervised Release . . . and (2) Driving with a Revoked License in 2013 for which he was sentenced to one year of imprisonment and one year of" Mandatory Supervised Release ("MSR"). *Id.*, ¶ 2. Anderson has been a parole agent with the IDOC since 2004. *Id.*, ¶ 4. As a parole agent, Anderson monitors "individuals assigned to his caseload who are serving terms of MSR to ensure that those individuals comply with the conditions established for them by the Prisoner Review Board ("PRB")." *Id.*, ¶ 5. Anderson "is also responsible for writing violation reports and investigating potential host sites as directed by his supervisor." *Id.*, ¶ 6. In 2014, Anderson was assigned to the Sex Offender Supervision unit. *Id.*

"[W]hen an inmate is transferred to an IDOC reception and classification center from a county jail, the inmate participates in an intake process, which includes a calculation of the inmate's sentence by the record office." *Id.*, ¶ 7. An inmate's MSR date is determined "on the day that inmate is transferred to IDOC custody." *Id.* "IDOC inmates who have completed a term of incarceration are required by law to serve a term of MSR." *Id.*, ¶ 8. Prior to being released on MSR, an IDOC inmate must have an approved host site. *Id.* When an inmate is transferred to the IDOC on their MSR date, the inmate submits "potential MSR host sites and the Field Services Office, in conjunction with the Parole Re-entry Group, [ ] determine whether the

inmate [can] be released to a transitional housing site." *Id.*, ¶ 11. Sex offenders cannot be released to transitional housing sites. *Id.*, ¶ 12. Consequently, a host site must be approved. *Id.*, ¶ 8. A "gate violation" report is submitted "for inmates who do not have suitable host sites when they become eligible for MSR." *Id.*, ¶ 9.[1]

On March 24, 2014, Smith was transferred from the Cook County Jail to the IDOC. *Id.*, ¶ 19. At that time, Smith had completed his "term of imprisonment for the 2013 felony conviction." *Id.* However, he was required to serve a "one-year term of MSR on the 2013 felony conviction." *Id.*, ¶ 20. Thus, Smith was transferred to the IDOC on the same day that his term of MSR started. Upon arrival, Smith "submitted two potential host sites." *Id.*, ¶ 21. Smith admits that these host sites were never approved. *Id.*, ¶ 35. Smith also admits that "IDOC inmates must have an approved host site before they can be released to serve a term of parole." *Id.*, ¶ 8.

Anderson prepared a gate violation report for Smith indicating that Smith did not have an approved host site on March 24, 2014 when he was transferred to the IDOC. *Id.*, ¶ 23. Although Smith disputes the justification for why this gate violation was drafted, the record confirms that Anderson was directed by his supervisor to write a gate violation report because Smith did not have an approved host site. *See* Dkt. 39-2, Ex. B ¶¶ 4, 5; Dkt. 39-3, Ex. C p. 3. Smith also disputes that his potential host sites

---

[1] Smith failed to respond to paragraph nine of Anderson's Local Rule 56.1 Statement Of Uncontested Facts In Support Of His Motion for Summary Judgment. "A litigant's failure to respond to a statement of fact in a Local Rule 56.1 Statement results in the court considering the uncontroverted statement admitted." *Sanchez v. Walker*, No. 09 C 2289, 2010 WL 5313815, at *2 (N.D. Ill. Dec. 17, 2010).

were "investigated for approval." Dkt. 42, ¶ 31. But the record demonstrates that one host site was investigated and denied on April 9, 2014 (because the resident rejected Smith's transfer to that location), Dkt. 39-3, Ex. C p. 7, and the other host site (his mother's house) was investigated and denied on or about June 6, 2014 (due to the presence of children and internet access). *See* Dkt. 39-2, Ex. B ¶¶ 7, 8; *and* Dkt. 39-3, Ex. C p. 8. In fact, Smith admitted in his deposition that the second potential host site (his mother's house) was investigated in May or June of 2014, Dkt. 39-1, Pl. Dep. 29:15-24; 30:5-13, and that field services repeatedly informed him that his host sites were "under investigation." Dkt. 39-1, Pl. Dep. 34:17-21; 38:21-23. Although Smith disputes that any other sites were actually investigated, *see id*. at 28-29, he has adduced no evidence to contradict that both of his potential host sites were in fact investigated and denied, or the reasons for which they were denied. Nor does Smith dispute that, in the absence of an approved host site, neither Anderson nor the IDOC had the ability to release him, since "IDOC inmates must have an approved host site before they can be released to serve a term of parole." Dkt. 42, ¶ 8.

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A motion for

summary judgment requires the Court to construe all facts and to draw all reasonable inferences in favor of the non-movant. *Id*. at 255.

Local Rule 56.1(a) requires the "party moving for summary judgment to include with that motion 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgement as a matter of law.'" *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. R. 56.1(a)(3)). The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Genova v. Kellogg*, 12 C 3105, 2015 WL 3930351, at *3 (N.D. Ill. June 25, 2015). "The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial." *Id*. The non-moving party must respond to the movant's Local Rule 56.1(a)(3) statement and may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits. N.D. Ill. R. 56.1(b); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must go beyond the pleadings and support his contentions with documentary evidence of specific facts that demonstrate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## DISCUSSION

In his complaint, Smith states that "[t]his is a claim for violation of plaintiff's civil rights as protected by the Constitution and laws of the United States under 42 U.S.C. §§ 1983, 1985, 1986." Dkt. 8, ¶ 1. He "also claims violation of rights that

may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or any other claim that may be supported by the allegations of this complaint." *Id*., ¶ 14. Anderson asserts that Smith "fails to specify any particular provision of the Constitution on which his claims are based[;]" however, Anderson argues, "[i]t appears from the nature of the facts alleged in the complaint that [Smith] believes he was subjected to false arrest and false imprisonment based on a warrant prepared by Agent Anderson." Dkt. 38, p. 5. Smith contends that the "warrant" prepared by Anderson (the gate violation report that Anderson prepared in March 2014) contained false statements. Dkt. 43, p. 1. Based on the allegations in the complaint, the motion for summary judgment addresses Smith's 42 U.S.C. § 1983 false imprisonment claim, as well as his state law claims. Although the motion for summary judgment does not explicitly address Smith's 42 U.S.C. § 1983 false arrest claim, because Smith relies on the same set of facts in support of both his false imprisonment claim and false arrest claim, and because the inquiry would be similar for both claims, the Court addresses whether a genuine issue of material fact exists as to either claim.

**I. 42 U.S.C. § 1983 Claims for False Arrest and False Imprisonment**

"To survive summary judgment of a claim brought under § 1983, this court focuses on '(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"

*Armato v. Grounds*, 766 F.3d 713, 720 (7th Cir. 2014) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). In the instant matter, Anderson acted under state law as he was employed as a parole agent with the IDOC and he was following state law procedures when making decisions regarding Smith's release. *See id*. Therefore, to survive the motion for summary judgment, Smith must "establish that a reasonable trier of fact could find that he was deprived of his constitutional rights by being detained beyond his release date." *Id*.

To prevail on a claim for false arrest, Smith "must establish that the Government's conduct constituted a seizure and that seizure was unreasonable." *Aguero v. City of Chi.*, No. 08-cv-6689, 2010 WL 2640370, at *3 (N.D. Ill. June 3, 2010); *see also Bielanski v. Cnty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008). Likewise, "a detention may rise to the level of false imprisonment if it is significant enough to inhibit an individual's constitutional liberties." *Id*. "A § 1983 false imprisonment claim seeks damages for injury caused by the plaintiff's detention without probable cause." *Id*. (quoting *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010)). In order for Smith's false arrest claim and false imprisonment claim to survive the motion for summary judgment, as the non-movant, Smith was required to provide documentary evidence of specific facts illustrating that there is a genuine issue for trial. However, by his own admissions Smith has demonstrated that there is no genuine issue regarding (i) whether Anderson's conduct amounted to an

unreasonable seizure or (ii) whether Smith was detained without probable cause. Accordingly, the motion for summary judgment must be granted.

On March 24, 2014, Smith was transferred from the Cook County Jail to the IDOC. Dkt. 42, ¶ 19. That same day, his term of MSR started. *Id*. Upon arrival, Smith "submitted two potential host sites." *Id*., ¶ 20. Smith admits that these host sites were never approved. *Id*., ¶ 35; *see also* Dkt. 39-1 Pl. Dep. 35:24; 36:1-3. He also admits that "IDOC inmates must have an approved host site before they can be released to serve a term of parole." Dkt. 42, ¶ 8. Moreover, the Illinois Administrative Code, §1610.110 provides that:

> a) When an order for release on parole is entered, it shall not be effective and the applicant shall not be released until the Office of Adult Parole Services or Family and Youth Counseling Services has satisfied itself that suitable arraignments have been made for:
>
> 1) The applicant's gainful employment and/or education or training programs *and for a proper and approved residence.*
>
> 2) The chief administrative officer of the institution shall have the authority *to hold the prospective parolee until these arrangements have been approved* . . .

(emphasis added). *Murdock v. Walker*, No. 08 C 1142, 2014 WL 916992, at *10 (N.D. Ill. Mar. 10, 2014) (quoting 20 Ill. Admin. Code § 1610.110). Despite these provisions, Smith argues that he "was admitted into IDOC, released, and then admitted back in to IDOC due to an invalid arrest warrant issued by defendant Anderson," Dkt. 45, ¶ 11, citing a one-page document listing Smith as released and re-admitted to the IDOC on March 24, 2014. *See* Dkt. 45, Ex. A. But there is no dispute

8

that Smith was not actually released on that date; nor could he be, because he had no approved host site. The record is thus consistent with the fact that the IDOC was unable to release Smith, and did not do so, on March 24, 2015. Moreover, the Illinois Administrative Code demonstrates that even if an order for release on parole is entered, it does not become effective until certain conditions are met. 20 Ill. Admin. Code § 1610.110. Here, although Smith was approved for release on parole, the IDOC was prohibited, by law, from releasing him because his host sites had not been approved. Smith appears to understand this principle as he admits that in order to be released on MSR he needed an approved host site. He also admits that no such host site was ever approved. Consequently, the IDOC had the authority to "hold" Smith until his parole arrangements had been approved. Therefore, there is no genuine issue as to whether or not the purported "seizure" Smith alleges was reasonable.

Additionally, when an inmate is released on parole, "[t]he IDOC retains custody of all prisoners released on parole and is charged with supervising those persons during their release 'in accord with the conditions set by the [PRB].'" *Murdock*, 2014 WL 916992, at * 2 (quoting 730 ILCS 5/3-14-2). As required by law, Smith was not released on MSR because he admittedly failed to satisfy the housing conditions. *See id*., at *10 ("[t]he housing conditions must be satisfied or an inmate cannot be released.") Thus, Smith's admissions demonstrate that there is no genuine issue of material fact regarding whether or not Anderson had probable cause to detain

Smith and no reasonable jury could find in his favor on the 42 U.S.C. § 1983 false arrest claim or the 42 U.S.C. § 1983 false imprisonment claim.

Smith attempts to avoid this result by recasting the issue. According to Smith, "[t]his is not a case of whether plaintiff had an approved host-site or not. It is a case of whether the defendant intentionally falsified a warrant affidavit to have the plaintiff intentionally arrested, imprisoned and maliciously prosecuted." Dkt. 43, p. 7. Smith contends that the "warrant" (the March 24, 2014 gate violation report) "was not accurate because electronic monitoring was not part of the conditions of his MSR," at that time, and was only "added as a condition of Plaintiff's MSR in May, 2014." Dkt. 42, ¶ 25-26. Regardless of any other information that Anderson included to justify issuing the parole violation, Smith admits that he could not be released until a host site was approved, while he was in custody at the IDOC. *Id*., ¶ 8. Again, the law requires the IDOC to keep an inmate in custody until a host site has been approved, irrespective of whether or not the PRB sets a specific date for release on parole, and Smith does not dispute this. Accordingly, the facts that Smith does dispute do not create a genuine issue for trial regarding whether Smith lawfully remained in the custody of the IDOC.

## II. State Law Claims

Beyond the conclusory statement in his complaint, that he is asserting a claim for malicious prosecution under Illinois state law, Smith's memorandum in response to Anderson's summary judgment motion is the first time he includes any details

regarding his malicious prosecution claim. *See* Dkt. 43, p. 3-7. It is also the first time he raises a Fourth Amendment malicious prosecution claim, which he refers to as "a claim for malicious [prosecution] under section 1983." *Id*., p. 4. It is unclear whether Smith is attempting to transform his false arrest claim and his false imprisonment claim, pursuant to 42 U.S.C. § 1983, into a Fourth Amendment malicious prosecution claim, or whether he is attempting to amend his complaint with details that support a state law malicious prosecution claim. Nevertheless, both arguments fail.

As Anderson correctly argues, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Insolia v. Philip Morris Inc*., 216 F.3d 596, 606 (7th Cir. 2000) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)). Thus, Smith's state law malicious prosecution claim fails. Moreover, Anderson correctly asserts that while "Illinois provides for a malicious prosecution tort, no federal claim is available." Dkt. 54, p. 3; *see Parish v. City of Chi.*, 594 F.3d 551, 553-54 (7th Cir. 2009) (the Seventh Circuit does not recognize "a federal claim in the nature of malicious prosecution.") Therefore, Smith cannot establish a claim for malicious prosecution under federal law.

Smith's only mention of his state law false arrest, assault, battery, false imprisonment, and conspiracy claims appear in paragraph fourteen of the complaint, where he states that he is also pursuing claims for "violation of rights that may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/ or any other claim that may be

supported by the allegations of this complaint." Dkt. 8, ¶ 14. As Anderson argues, "this statement is vague" and "the factual basis for any such claims [is] unclear." Dkt. 38, p. 10. The Court agrees. The complaint is devoid of any factual details that would support Smith's state law claims. "Judges are not clairvoyant, and if they were required to go out of their way to analyze every conceivable argument not meaningfully raised, their work would never end." *Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013). Smith has failed to meaningfully assert any state law claims, leaving nothing for this Court to rule on regarding the existence of a state law claim for false arrest, assault, battery, false imprisonment, or conspiracy.

## CONCLUSION

For the aforementioned reasons, Defendant Paul Anderson's motion for summary judgment, Dkt. 37, is granted. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated: 5/23/2016